Good morning, Charles Brower, appearing on behalf of Mr. Nunes in this matter. Our position is that the court should reverse the decision of the magistrate judge based upon the fact that the judge did not view the facts in the light most favorable to the plaintiff on the motion for summary judgment, and also he applied the incorrect law with discrimination. In this case, Mr. Nunes had worked for HIE for a number of years. He began working there in 2008. He was a delivery driver carrying heavy water bottles. By the beginning of June 2013, he started to feel more and more pain in his left shoulder and in his part-time warehouse worker, if he would be willing to switch with him so that Mr. Nunes could do the more light-duty warehouse work part-time, and Mr. Aguinaldo. Was he actually fired or terminated? Mr. Nunes? Yes. Yes, he was terminated. He didn't quit voluntarily?  All right, and what was the reason given by the employer? The employer, the reason they gave was that the, due to budget cuts, the warehouse job, the part-time warehouse job was eliminated, and therefore Mr. Nunes would not have that position despite the fact that they had approved the switch a few days before that. And on what basis did the district court grant summary judgment to the employer? On the basis that we had not approved our case with regard to the regarded as the disability, because the judge had indicated that . . . The district court actually considered the regarded as portion of the definition? Yes, Your Honor. All right, and said what about it? Well, he said under the regarded as that the law is that we must show that the employer regarded the plaintiff as being substantially limited in a major life activity when in fact the law is not that. That changed in 2008. The judge quoted a case from prior to the change in the law, the ADAAA. So that's our position with regard to the incorrect law that was applied. Now, there are several definitions of disability. One is the regarded as you're speaking about. Now, another one is the so-called physical definition. Yes. Did you argue that below? I know the judge ruled on it, but I'm having a hard time finding where you actually raised that below. Well, I reread my argument before arguing the case before this court, and I did reference . . . It was mentioned in the oral argument, I take it, on the motions for summary judgment. Is it in the papers anywhere? The submittals to the magistrate judgment? No, in the papers that you submitted. Did you submit any written arguments with respect to the so-called physical definition of disability? Judge, as I stand here, I don't recall that. Okay. But I know that at the argument, I did reference the shoulder injury and the wrist injuries and the fact that there was a lifting restriction when the judge asked me about that. And then the judge specifically asked me if this is a regarded as situation. And we went on to discuss . . . And you briefed and argued the regarded as issue. I'm trying to focus on the physical definition of disability. I know the judge ruled on it. The judge has a portion of his order that deals with it, and it's briefed on appeal, but the other side suggests that maybe you didn't preserve it below. So I'm trying to find out if you did. Well, I believe it was mentioned in the opposing papers that that would be one of the three criteria for establishing disability. The record of and also the regarded as perceived to be disabled. And definitely on the argument, I did discuss that issue. And the judge understood because he asked me specifically, is this a regarded as situation? And your answer was yes? It was. Did you give him a definition at that time? Or was there any discussion about what does regarded as mean? Or what's the definition? Again, I'd have to review the . . . You don't recall any discussion about that? I mean, frankly, I think we did discuss what that means in terms of if an employer regards an employee as . . . What I'm getting at is during the oral argument there, did he say something about what in his eyes regarded as meant as it reflected in the summary judgment order? You know what I mean? Yeah. Frankly, I don't think that there was a major discussion on the law. We were talking mostly about the facts and what the theory of the case was. So I think it was more in his order that he came out with that he . . . Focusing on the regarded as argument, assuming that the district court applied the wrong standard, do you win or is there . . . I'm going to put it differently. Can you defeat summary judgment under the right standard? What's the evidence that goes to that? Okay. Well, if you view the facts in the light most favorable to us, Mr. Nunes said early June he wanted to switch to the lighter duty job. They told him on June 14th that it was approved. Then on June 17th, he told the management that he was having the pain in the left shoulder. And then two days later, after he worked two days in a row with no discussion about anything, he was falsely told that the job was eliminated. So our position is that based upon those facts, the jury . . . And the evidence that he was falsely told is in part that on June 24th, there apparently is an email correspondence about, would you please place an ad for a warehouse position. But their position that they said is no longer available because of budget cuts. And then the testimony and the evidence that on June 26th, they actually advertised for the position. Right. And between June 17th and June 19th, you said he was working. Was he working as a warehouse person or as a delivery person? As a delivery person. Oh, he's continuing to work as a delivery person. Yeah, because he had been working with the pain for a number of years. Okay. We're splitting our time, so I've finished with my portion. Okay. I'd like to reserve two minutes if I can. Perfect. Good morning, and may it please the Court. My name is Susan Oxford. I represent the Equal Employment Opportunity Commission as amicus curiae in this case. If I could address the evidence that would establish he met the regarded as definition of disability. He, as Mr. Brower said, he had requested a transfer, and it was approved. And High Holding says that when he asked for the transfer, there was no mention of pain. This is important because as Congress amended the definition of regarded as disability, they folded in an element of causation. And just to back up a step, an individual meets the regarded as provision definition of disability if they have an impairment and the employer takes an adverse action because of it. It's that simple. And in our regulations, in the portion we recite in our addendum, we explain that if an individual has a skin graft, so that is a disorder of the skin or a condition of the skin, it's been altered, and the employer fires them because of it, no evidence that they cannot do a job or they're limited in any way in doing anything. They have met the definition of regarded as disabled. And Congress altered the definition that way because courts were tripping over who was covered under the Act instead of looking at whether discrimination based on disability occurred, and Congress wanted courts to move in that. So he meets the definition because when he asked for the transfer and it was approved, he had not mentioned shoulder pain. And then two days later he first mentions shoulder pain. That would be June 17. Nothing happens that day, but he mentions it, and so they're on notice. His manager, Mr. Watabu, later says in his declaration that he had never missed a day of work and he'd never expressed any pain other than normal aches and pains that one would expect when you're lifting heavy things regularly. And so I would submit a jury could find that that comment on June 17, Mr. Watabu heard I have shoulder pain as normal aches and pains that anyone would have. But two days later, so after doing three full days of the delivery job, at the end of the day on June 19, he says I'd like to go see my doctor for the shoulder pain before my medical benefits run out, which would happen when the approved transfer occurred because he was going from full time to part time. And at that point when he notifies them he's going to see a doctor about it, now it's not ordinary aches and pains. That's the first time at the end of the day, June 19, that high holding is on notice that there's something more wrong with his shoulder, not that he can't do the job and he has no obligation to prove coverage to show he's limited in any way, just that he has an impairment. And at that point things start to happen, and there are conversations back and forth with Honolulu, and later that day the transfer is withdrawn. So we can, in taking those facts into light and most favorable, a reasonable jury or a reasonable finder of fact could infer that the pain was regarded as a disability. Right. In the absence of that August 19 interaction, and that's why I was asking Mr. Brown the question, merely the fact that he'd mentioned shoulder pain earlier on, would that be enough to get to a jury? No. Anyone could feel sore for any number of reasons. So it was only that he gave indication that it was something a little more serious, and that all of the evidence in the record shows that that was in fact an impairment. Very soon after that his doctor diagnosed a rotator cuff syndrome, and he continued in treatment for more than six months. That we know from the record because High Holding put those medical records in, in their summary judgment. But the fact that he had the impairment isn't really relevant to us today, is it? It is completely relevant. The only grounds on which the district court granted summary judgment was that he was not covered under any of the three. Right. No, I guess I'm saying if the employer regarded something as an impairment, whether or not you actually had an impairment doesn't matter. That's absolutely right. But in this instance, and the only reason I mention the medical records, because there is an exception to the regarded as definition of disability, and that is if it happens to be something temporary and minor, and the definition, the durational limit is more than six months, or less than six months, would be temporary and minor, transitory and minor, I'm sorry. But the condition has to be both transitory and minor. And so here we know from the medical records that High Holding put into the summary judgment record that, I'm sorry, I'm approaching my time, that we know it wasn't transitory because it lasted more than nine months, and it wasn't minor because the pain was very intense. Let me ask you the following, and don't worry, we'll give you, you're trying to save rebuttal time and we'll make sure you have a little. Why are you intervening or coming in as an amicus? This seems a very straightforward case. It does. So why didn't you just leave it alone? District courts in this circuit and in other circuits, we have found, are just missing the fact that Congress amended the statute in 2009 and made this sea change in the way disability is evaluated, coverage under the Act is evaluated. So in our statement of interest, we pointed out that there was another case pending on appeal, Baker. And that case, we also participated as an amicus, and this court correctly applied the amended definition to reverse summary judgment. That's the case on which you filed the 28-J letter, right? That's correct. And that case, though, was decided in an unpublished decision. So we still lack that kind of precedential authority. And the district court in this case looked to the only authority it could find from the Ninth Circuit, and that was the Walton decision in 2007, so before the amendment. One last question before you sit down. Maybe I should have asked Mr. Brower this. Why don't we just, in this case, if you're right, tell the district court what the correct standard is and remand for the court to apply the correct standard to the facts as opposed to applying it in the first instance ourselves?  There's nothing to be gained by allowing the district court to apply its discretion. There is no discretion to be had here. And if I could just point the court to the regulations that we attached in our addendum and the appendix to our regulation, the guidelines that explain it. We recite some of the congressional legislative history that accompanied the amendments, and it is so straightforward that I'd hate for the district court to be misled into thinking there's something to grapple with here. Well, let me ask a related question now. Assuming, supposing, we agree with your, you know, that the district court erred in not applying the amended definition of the regarded as. In other words, that, you know, it made an error of law. Are you saying that the record is such that then, under the correct interpretation, it's clear that the summary judgment record shows that the plaintiff should prevail? Is that what it amounts to? Yes, that a jury could find that high holding withdrew the transfer and told him you are fired instead. So the summary judgment should be denied on this issue to either side. I'm not sure that was a cross-motion. Was that your question, that summary judgment should be denied? No, no, no. My question is, is it your position then that if the correct law is applied under this record, the plaintiff is entitled to summary judgment? Well, the plaintiff didn't move for summary judgment, but if the plaintiff had, I would say yes. Aren't some of these facts disputed? Aren't there some? Yes. So then that's, I think, what we're both trying to get at. Okay. I didn't analyze it from the perspective. There are enough facts that are undisputed, but you're right. I can't answer the question without going back and looking at it. But the only question in front of us is summary judgment was granted to the employer, and the issue is whether or not summary judgment was properly granted. Right, exactly. Okay. Let's hear from the other side, and we will give, depends on which one of you wants to argue, we'll give you a chance to rebut. Good morning. May it please the Court, Marguerite Fujie, appearing for Defendant Appellee H.I.E. Holdings, Inc. First, I'd like to address Your Honor's question that you posed to Mr. Brower here. Of course, Your Honors are aware that H.I.E. has made an argument that Mr. Brower or Mr. Nunez waived the argument for actual disability because it was not briefed in the initial opposing papers. And I would submit that. Why is actual disability an issue when the argument appears to be whether or not he was regarded as? Well, Your Honor, below, before the district court, Mr. Nunez argued that he was actually disabled. At the oral argument, because it was unclear from the moving papers, the opposing papers, the district court was confused as to what the argument was. During the oral argument, Mr. Brower argued that it was a regarded as argument. But there's two different definitions. One might be disabled under one, but not under the other, correct? Correct. So, and I take your point that there's some confusion in the record below about whether this physical branch was preserved. But the district judge did address it. Yes, Your Honor. The district court addressed each and every one of the definitions. And they're briefed on appeal. Well, I would argue that Mr. Brower did not brief on appeal the regarded as argument. However, the EEOC had. And we had argued in our papers that the EEOC cannot supplement something that was not specifically. Okay, well, focus on physical for a second. It's briefed on appeal? It is briefed on appeal, Your Honor. We have the, this is not a rule of jurisdiction. We can take it up. Should we ask for supplemental briefing on regarded as? No, Your Honor. I think that I'm able to address the regarded as argument. Okay. But if you answer that way, that sounds as though you're waiving the argument that the failure to brief it by Mr. Brower makes any difference. Well, I would request that I be permitted to argue without waiving any of our waiver arguments, Your Honor. Well, but I'm asking you if you'd like for us to have supplemental briefing, we could argue, we could ask for supplemental briefing on regarded as from Mr. Brower. Your Honor, I think that supplemental briefing wouldn't help Mr. Brower's case in this instance. Okay. So on the regarded as, put aside the physical for a second. Isn't it pretty clear that the district court didn't apply the amended definition? Your Honor, HIE acknowledges that the district court relied upon the Walton case, which was a pre-2008 amendment. Right. And whether or not you should have won or lost, that was the issue I'm sort of asking the other side. Isn't that, isn't applying the wrong law something we should tell the district court? No, that's not correct. You should either go back and do it right or under the right standard, as the other side suggests, the motion should be denied. Only if the issue has been sufficiently raised, right? Right. But, you know, it's raised in the sense that the district court discussed it and came to a conclusion on what it meant. And then both sides had the opportunity to brief it on appeal. And the EEOC saw, you know, here's the case we're interested in. You don't think it's sufficiently raised for us to consider it? I don't believe it was sufficiently raised where appellant had only cursorily addressed in its moving papers, or at least in the appeal papers, that... Well, you weren't prejudiced in any way, were you? By the, you know, we'll say the inadequate way, in your view, that it was raised by the appellant? Well, to the extent that it is raising issues now that we have to address that wasn't raised below, I think the authority shows that he shouldn't be permitted to do that here. However... Let me ask a related question. If we were to send it back down on the basis of, you know, error of law on that definition, is there anything further you could present to the district court, you know, on the regarded as definition? I don't think so, is there? No, not on the factual record that was presented. How about on the physical definition? On the physical definition, we could probably submit further evidence. I don't understand what you mean. That shows it wasn't a major element or something like that? Well, what I think the district court struggled with was it found that HIE did not specifically dispute the physical impairment aspect of that. And to the effect that we can make that clear that we are disputing that Mr. Nunez had a physical impairment, that is something that we can probably elaborate on and better argue before the district court. However, even if this court finds that the district court applied the wrong standard, it should still be able to reach the same result. Based on? Based on the fact that the limited universe of facts in this case does not support a finding that Mr. Nunez was regarded as having a physical impairment. And that's why we've been trying to focus on those facts. I'd like to hear your response to the EEOC's argument. What, if I can summarize it, is that the day before he was told the job was no longer available, he told his employer that he wanted to go have his shoulder checked out while he still had economic benefits. And a job that, taking the facts in the light, most favorable to the other side. I know you dispute these facts. A job that was previously available then became unavailable the next day. And then it becomes magically available a week later when they advertise for it. So why isn't that enough? I mean, it's not a smoking gun. It's all circumstantial. But why isn't that enough for a reasonable jury to conclude that the employer regarded Mr. Nunez's problem as a disability? That's a good question, Your Honor. And Mr. Nunez is asking this court to read inferences into that sequence. The question is whether those facts are enough so that a reasonable person, leave us out of it, an objectively reasonable person, a common person, would say from that, yeah, that's some evidence, enough to create a question of fact. I think that is not enough to create a question of fact. And I don't believe a reasonable jury would be able to find that because of that sequence, that HIE terminated Mr. Nunez because of disability. And the district court correctly- Pretend I'm a juror, and we've just presented you with the facts as the plaintiff would have them, which is to say I had a transfer approved to the warehouse. I told my employer on June the 17th that I was experiencing shoulder pain and I wanted to go to the doctor for it. Two days later on the 19th, my previously approved transfer is denied. Then within the next week, there's an advertisement for the very position that I've been told is not available in the newspaper. What explanation do you have to me, the juror, that from the employer's side is an innocent explanation? What are you going to argue? Let me first point out one misstatement of fact that the EEOC made in this case. Mr. Nunez did not state to HIE that on June 19th that he needed to see a doctor for his shoulder and that he wasn't able to- So you're saying that the evidence won't show that he said that he had a bad shoulder? Well, the evidence will show strictly that he complained of generalized, unspecific shoulder pain. He does not relate that to his wanting to switch positions, and he also did not say that's why I want to go to the doctor. What does that mean? Are you sort of raising the issue of what the word impairment means? He didn't have an impairment? Yes. That's kind of an amorphous term. Yes, Your Honor. I think that the one single comment about generalized shoulder pain is not sufficient for this court of orgery to- Let's make sure we're talking about the same thing here because the- And again, I'm referencing the argument from the amicus. The EEOC says, look, the comment on the 17th, I think, which is I've got shoulder pain, isn't enough. But two days later, there's a meeting in which Mr. Nunez says to his supervisor or someone, my shoulder's bothering me, I better go check it out, get it checked out at the doctor while I still have medical benefits. Is it your position that that statement isn't specific enough? That statement is not supported by the record, Your Honor. So what does the record reflect? The record reflects that on June 17th, Mr. Nunez claims that he reported to Mr. Watabu that he had generalized- Right, right, we all agree. But focus on this statement that I've got to go see the doctor. Was that made? That occurred on June 20th. He never told Mr. Watabu that he needed to see a doctor. He saw a doctor on June 20th, which was the day after that conversation took place regarding HIE's declining to offer that part-time position. So we would argue that any of those facts are irrelevant to the issue because it took place after- So you have a factual dispute about whether or not that occurred? Taking the facts in the light most favorable to Mr. Nunez, is that what you've just done? No, Your Honor, I'm not disputing that fact. I'm saying that it's not in the record, it's not supported by the record. That's what I'm saying, taking the record in the light most favorable to him, you're saying the second discussion occurred after the job was withdrawn? I'm saying that there was no discussion that he- There's nothing in this record to reflect that discussion? All we have here and all that's relevant to the inquiry is what HIE knew prior to declining to offer the part-time position, and the only thing that HIE knew was a general complaint of shoulder pain. Which I think the EEOC at least says probably isn't enough to trigger it. So the issue is one of what the record shows, in your view. Yes, well the district court was correct in also looking at the factual context in this case. In particular, the district court considered the fact that Mr. Nunez had never called in sick due to shoulder pain, or for any reason, I suppose, did not file a worker's comp claim, and continued to work on the 17th, on the 18th, and on the 19th without incident. Furthermore, HIE had explained on June 19th to Mr. Nunez that he was going to be administratively processed as having voluntarily resigned, and that his two weeks, which is customary for an individual resigning, and that his two weeks would end on July 3rd. If HIE regarded him as disabled, that wouldn't have occurred. And based on those facts, I don't think that a reasonable jury could find that the inference of just the sequence alone was enough to find that he was regarded as disabled by HIE. So your argument comes down to this, that even assuming that the district court erred in the definition of regarded as, that in the summary judgment order, if there is such a thing, it was a harmless error of law. Because even under the correct definition of regarded as, the record still wouldn't support judgment for the plaintiff. Is that what you're saying? Your Honor, a summary judgment. Even drawing all the reasonable inferences in favor of the plaintiff's record is still not sufficient. Yes, Your Honor. And I'm looking at Mr. Nunez's declaration, and you're correct in saying that this, the specific thing that was pointed out to us by the other side isn't in it. But I'll be interested to hear from the plaintiff as to where they think it is in the record. I have a couple of minutes left, so if I may move on unless you have further questions, Your Honors, on this point. So, Your Honors, this panel can find, regardless of district court's misapplication of the standard, can find on appeal that the district court is correct in its conclusion. That Mr. Nunez did not establish that he was disabled under any of the prongs of the definition of disability. Even assuming that after Your Honors reviews the record and finds that there are facts sufficient to create a genuine issue of material fact, Mr. Nunez still does not establish a prima facie case here. He does not show or demonstrate that he was a qualified individual. Oh, but the district court never reached that issue, did it? Correct, the district court never reached that issue because it found that . . . Well, so why . . . I mean, and I guess it's the same question I asked the other side, and their answer is, of course, we'd win if you ruled in our favor. But other than the fact that you'd like us to rule in your favor, why as a matter of judicial efficiency shouldn't we just . . . if we don't affirm, send it back to the district court and say you've got some other issues to address? Well, if you were to do that, Your Honors, the district court would then, assuming found in favor of Mr. Nunez on the disability question, would then have moved on to the next prong . . . Right, and it might find for you on that, and you might win. And then if the district court's right or wrong, each side would have a right to appeal. One of my concerns about us taking up issues in the first instance is there really isn't any appeal from us as a practical matter. And so when we do that, we really deprive both sides of appellate review. You know, I'm reading paragraph 7 of Mr. Nunez's declaration. He says, and it's pretty quick, pretty cursory, On June 17, I reported to my operations manager, Noreen Oyemut, that I was having shoulder pain. Oyemut told me I had to notify Wataubu. On June 17, there's paragraph 8, I also reported the shoulder pain to Wataubu. Boom, that's all he says. Now, if that's all there were, maybe this is a thin case. But what troubles me is what's in addition, according to the evidence of the plaintiff, he was then given a false reason. The reason he was given was, listen, the position has been eliminated because of budget cuts. But if we believe the plaintiff's evidence, that's just not true. So why are they covering up and giving him a false reason? If it had nothing, if the real reason was one that they could admit to. I don't get it. Which tells me why this is a case that the jury could find against you. I think, Your Honor, if a jury had before them all the facts, the factual context, the indisputed factual context in this case, it would find that that inference from that statement is not a reasonable inference. Okay. Thank you. And I have another minute left, and I understand. You're now using our time, but if you do have something you need to say, you can say it. No, Your Honor, I think I'll rest on that. Thank you. Okay. Thank you. Okay. Okay. Thank you. I have a very specific question I'd like you to answer. You referred in your opening remarks to a conversation on June 19th, and I'm trying to find out where that is in the record. And on page 4 of our brief, we cite to a document that High Holding put into the summary judgment record. That would be document number 26-12. Before this court, High Holding, again, included it in their supplemental excerpts of records, so it's beginning on page 203 and going forward for the next two pages. That is the summary of the Unemployment Insurance Division's examiner, who interviewed Mr. Nunes and then carefully recorded a number of details, most of which overlap entirely. And this is the one piece that is added in. Now, it's a state official record. Is that the examiner's, in effect, findings of fact, or what is it? Yes. Yes. At least that's how I read them. Summary of fact-finding interview. Give me the page in the S.E.R. 203. At the bottom, there's an entry, June 19, 2013. Claimant inquired with boss. So this is recording what Nunes was saying happened. Claimant inquired with boss if it was okay to see doctor before his medical ran out. Claimant advised that Oahu was going to fight him. He was asked if going to file a worker's comp. Claimant states yes because he got hurt on the job. Claimant later inquired with Noreen if boss spoke with Honolulu. Noreen said she didn't know, but boss would be back. And it goes on and describes the number of phone calls between Mr. Watabu and Honolulu and back again, and then coming back and saying, you have to resign. He says, why do I? All he knows is he asked for a transfer and it got approved. Now he's being told you have to resign right after he said, is it okay if I go see the doctor tomorrow? I'm not sure it matters for purposes of summary judgment, but that is inconsistent with his declaration, is it not? Not inconsistent. It fills in a gap. Well, his declaration says I didn't tell my employer about a job injury until after June 20th. That one piece, yes. That's slightly inconsistent with his declaration. But not on a material fact to his ADA claim. That would be relevant perhaps on the workers' comp claim where the question is, did the employer take action because it knew or didn't know about the intent to put in a workers' comp claim. But for the ADA, the only thing that matters is, did the employer have some indication that we're no longer talking about sore shoulders that anyone might get if they just do a little experiment? In light of that, isn't it pretty clear that we couldn't grant summary judgment even if it were in front of us to Mr. Nunez? I agree, and I'm sorry. Because there's a dispute. There's a fair dispute about whether this conversation ever actually took place. Do you think that the unemployment examiner's findings of fact are admissible for truth in this proceeding? What I think is that for purposes of summary judgment, this is evidence that could be converted into an admissible form, and so therefore it's fair. Wait a minute. It could be by what? By the plaintiff filing another declaration or something like that? Right, because this is a request. Well, he already had the chance to file a declaration. He knew about that testimony, didn't he? Summary judgment is not a game of gotcha that if you didn't do it. That's what I think you're making into a game by saying, well, he didn't do it the first time, so we'll give him another chance. He can do it the second time. I believe that this document that Heye put into the record, which fills in a gap that Mr. Nunes didn't see as necessary to elaborate in his declaration, but is still another statement. If somebody else is recording Nunes' statement, he's the plaintiff. He can certainly get on the witness stand and testify at trial as to what he said on this day. Again, would you point me to the precise page? SER 203. Great. Okay, because you said 209 before and I couldn't find it. I'm sorry. I meant 203, and it goes on for the next few pages through, I think, 205. And this purports to be the examiner's recounting of what Mr. Nunes told him, correct? Yes. He's not making factual findings. No. In fact, at one point he says that Mr. Nunes came with a narrative that he had written down and he asked, may I copy it? And so some of this, I believe, is repeating a narrative that Mr. Nunes had. So this is Mr. Nunes' explanation of what happened when he was asked by the unemployed. Well, it's the examiner's interpretation of what he heard his thought. It's not a debated transcript, then. Is that what you're saying? I can't remember whether this particular sentence came out of his written statement or what he was telling the examiner. Oh, so a double hearsay. We have the witness statement. There's four pages here. You're taking us down a rabbit hole. I'm perfectly content to rely on his actual declaration. There's enough in there for me. If the Court has no further questions, thank you very much. Thank you. Thank you. Thank both sides for their helpful arguments. Nunes v. HIE Holdings, submitted for decision.
judges: Tashima, W. Fletcher, Hurwitz